**CHICAGO, MILWAUKEE, ST. P. & P. R. CO.**

v.

**NORTHERN PAC. R. CO.**

Civ. A. No. 1761.

United States District Court

W. D. Washington, S. D.

Feb. 26, 1954.

B. E. Lutterman, Chas. F. Hanson and Morrel E. Sharp, Seattle, Wash., for plaintiff.

Dean H. Eastman and Roscoe Krier, Seattle, Wash., for defendant.

BOLDT, District Judge.

Plaintiff Chicago, Milwaukee St. Paul and Pacific Railroad Company (hereafter the "Milwaukee") pursuant to 49 U.S. C.A. 1(2) seeks to enjoin defendant Northern Pacific Railroad Company (hereafter the "Northern Pacific") from constructing approximately three miles of tracks with sidings and other subsidiary tracks. The proposed line would extend from a principal branch of the Northern Pacific to a 400-acre tract in the outskirts of the town of Moses Lake, Washington, which land, presently without industry, the Northern Pacific owns and proposes to develop into an industrial tract.

During the past ten years, because of extensive irrigation development from the Grand Coulee Dam, Moses Lake has been growing at a rapid rate. The town is centrally located in a vast area that eventually will be one of the great agricultural areas of the world. Moses Lake and its immediate vicinity has been served by the Milwaukee for many years by a branch line running into the town. From time to time as necessity demanded, additions to the Milwaukee's branch have been made and further additions to the branch for serving the area of the proposed Northern Pacific industrial tract are entirely feasible; in fact, the area already has been surveyed and Milwaukee engineers have drawn alternative plans for such project.

The Northern Pacific proposed industrial tract is located in an agricultural area in which no industries are presently located; however, at least two firms have made commitments to locate therein if the proposed line is built. Industrial sites are available on the existing Milwaukee branch line in Moses Lake and vicinity.

The Northern Pacific estimates the cost of the proposed construction at approximately $205,000; the Milwaukee estimate is considerably higher.

The terminus of the proposed construction would be about one mile from the end of the Milwaukee Moses Lake branch line and less than one-half mile from the city limits of Moses Lake. Under the plans for the proposed line there would be no separate station or agent for the line, no regularly scheduled trains or passenger service thereon, rates would be as for the station of Wheeler on the Northern Pacific principal branch line and the Wheeler agent would provide billing and other services.

The law pertaining to a controversy of this kind is well settled by the decisions cited in the trial briefs. In the following cases proposed tracks were held to be "extensions": Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 1926, 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; Marion & Eastern R. R. Co. v. Missouri Pacific R. R. Co., 1925, 318 Ill. 436, 149 N.E. 492; Missouri Pac. R. Co. v. Chicago, Rock Island & Pacific Ry. Co., 8 Cir., 1930, 41 F.2d 188, 193, certiorari denied 282 U.S. 866, 51 S.Ct. 74, 75 L.Ed. 765; Southern Pac. Co. v. Western Pacific California R.

Co., 9 Cir., 1932, 61 F.2d 732; Missouri Pacific R. Co. v. St. Louis Southwestern Ry. Co., 8 Cir., 1934, 73 F.2d 21; Union Pacific R. Co. v. Denver & Rio Grande Western R. Co., 10 Cir., 1952, 198 F.2d 854. "Spurs" or "industrial" tracks were found in the following: State of Idaho v. United States, D.C., 10 F. Supp. 712, affirmed 1936, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070; Missouri, K. & T. R. Co. of Texas v. Texas & N. O. R. Co., 5 Cir., 1949, 172 F.2d 768; Chicago, Milwaukee, St. Paul & Pacific R. R. Co. v. Chicago & Eastern Illinois R. Co., 7 Cir., 1952, 198 F.2d 8; Jefferson County v. Louisville & N. R. Co., Ky. 1952, 245 S.W.2d 611. In none of the cited cases are the facts exactly apposite to those in the present case, but under the decisions referred to there is no question as to the general principles applicable.

A detailed discussion of each of the cited cases would not serve any useful purpose. Suffice it to say that it is believed the decision made herein is not out of harmony with any of the cases cited by either party. The case closest to the defendant's situation is Missouri, K. & T. R. Co. of Texas v. Texas & N. O. R. Co., supra, but even that case has very important factual features that distinguish it from the present case.

Under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., a railroad desiring to build new track constituting an extension of its line must have an I.C.C. certificate of public convenience and necessity authorizing the construction, Section 1 (18), and the building of proposed extension tracks without a certificate must be enjoined on an appropriate application therefor, Section 1 (20). The jurisdiction of the I.C.C., however, does not apply to the laying of tracks which are merely for spur or industrial services, Section 1 (22).

■ It appears to be well settled that the Court must give a liberal or broad construction to the word "extension" and a limited or narrow construction to the words "spur" and "industrial" as applied in the Transportation Act to proposed railroad tracks. Lancaster v. Gulf C. & S. F. Ry. Co., D.C., 298 F. 488 at page 490; Texas & Pac. Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; Piedmont & Northern Railway Co. v. Interstate Commerce Commission, 286 U.S. 299 at page 311, 52 S.Ct. 541, 76 L.Ed. 1115; Interstate Commerce Commission v. Piedmont & Northern Railway Co., D.C., 51 F.2d 766 at page 774.

■ Under the statutes, this Court has no concern with and no right to consider whether public convenience and necessity require or would be furthered by the proposed track and any factors bearing on convenience or necessity of the public are irrelevant to the ultimate question that must be determined in this case. Neither the making of an application by defendant in 1948 for a certificate authorizing construction of proposed track in the same general area nor the action of the Interstate Commerce Commission in denying that application has any bearing on whether the presently proposed track is an extension or a spur; however, the fact is that there is no substantial or material difference in the essential elements of the situation presented by the 1948 application and that presented by the track-laying proposal now under consideration. The two proposals in all material respects are identical. Inasmuch as the Interstate Commerce Commission, with exclusive jurisdiction to consider and determine public convenience and necessity, held that the track proposed by defendant in 1948 was not authorized on such grounds, there would be all the more reason for this Court not to permit any consideration of public convenience or necessity to justify the building of the presently proposed track as a spur or industrial line.

The question for determination in this proceeding is very narrow and limited. Basically it is: whether or not the track that the Northern Pacific proposes to build is an extension into territory new to that railroad and invading a field properly within or immediately adjacent to the area presently served by the Mil-

waukee. In dealing with similar controversies the Courts have considered a variety of principal factors, not any one of which has been held controlling in any given case. Among these factors are those indicated by the following questions:

Is the proposed track to improve rail facilities required by shippers who are already being served?

Is the proposed track to provide service to new shippers situated similarly to old ones and who are likewise entitled to service?

Will the track extend into "virgin territory"?

Is the territory to be served by the proposed track within or adjacent to a general area or community already being adequately served by another carrier?

Is it feasible or practicable for the entire area to be served and occupied by the carrier already serving the area?

Will the proposed track necessitate a substantial capital outlay?

These may not be all of the specific questions that have been posed in similar cases, but certainly they are the principal ones. As may be noted, the questions have been framed for the most part in the specific language of the decisions previously cited.

A further matter discussed in the cases relates to the presence or absence in connection with the proposed new track of stations, agents, line haul rates, billing by existing facilities, regular and continuous movement of trains and other similar circumstances. The authorities indicate that the presence of these conditions would be indicative of an extension, but the absence thereof does not necessarily establish the existence of a spur or industrial track.

■ If each of the questions above stated be answered in the light of the evidence in the present case, and the Court has considered the matter in exactly that way, in every instance the answer will indicate that the proposed track here in question is an extension rather than a spur or industrial track. Except for the absence of a station, independent billing and similar circumstances the Court does not find a single factor in the case supporting a determination that the proposed track is a spur. Irrespective of where the burden of proof lies in a case of this character, the evidence overwhelmingly establishes that as a matter of fact the proposed line is an extension and not a spur or industrial track. Accordingly, a certificate of the Interstate Commerce Commission certifying public convenience and necessity is required for the building of such a line. It being admitted that none has been issued, the defendant must be permanently enjoined from building the proposed track unless and until a certificate be issued.

Decree to such effect may issue.